ROBERT J. FENTON *v.* LIQUOR CONTROL COMMISSION

KING, C. J., MURPHY, ALCORN, COMLEY and HOUSE, Js.

Argued April 7—decided April 22, 1964

*Vincent M. Simko,* for the appellant (plaintiff).

*Carl D. Eisenman,* assistant attorney general, with whom, on the brief, was *Harold M. Mulvey,* attorney general, for the appellee (defendant).

HOUSE, J. The plaintiff has appealed to this court from a judgment of the Court of Common Pleas dismissing his appeal from an order of the liquor control commission suspending his restaurant liquor permit for a period of ten days, five days being held in abeyance for one year.

The plaintiff was summoned by the commission to answer to the complaint and charges of the commission, the particulars of which are as follows: "On or about the 27th day of December, 1961, in the Town of Bridgeport, you violated Section 204-10 of the Regulations of the Commission, in that, you did permit gambling (betting on horse race) on the permit premises; and as a result FRANK CAVANAUGH WAS CONVICTED IN THE CIRCUIT COURT

1-30-62 of a violation of Section 53-271 of the General Statutes—betting on horse race." After the hearing, the commission issued its suspension order, stating as its reason: "Unsuitability of Person by Reason of Violation of Section 204-10 of the Regulations of the Commission in that you did permit gambling (betting on horse race) on the permit premises."

The Court of Common Pleas considered the appeal on the record made before the commission. General Statutes § 30-60; *Boncal* v. *Liquor Control Commission,* 148 Conn. 648, 650, 173 A.2d 593. The Liquor Control Act vests the commission with a liberal discretion; *Cusano* v. *Dunn,* 137 Conn. 20, 25, 74 A.2d 477; but this discretion does not empower it to act capriciously or arbitrarily or in an unreasonable fashion. *Dadiskos* v. *Liquor Control Commission,* 150 Conn. 422, 425, 190 A.2d 490; *Barnini* v. *Liquor Control Commission,* 146 Conn. 416, 420, 151 A.2d 697. "The issue upon the particular facts of each case is whether the commission has followed the mandate of the law under which it purported to act and whether its decision is one which could be reached by an impartial appraisal of the facts, is the result of a due exercise of the faculty of reasoning and is consonant with a fair and just administration of the powers conferred by the Liquor Control Act." *Aminti* v. *Liquor Control Commission,* 144 Conn. 550, 553, 135 A.2d 595, and cases cited.

The relevant provisions of the commission's regulations at the time of the alleged violation were § 204-10 (now, as amended, § 30-6-A24), entitled "Conduct of permit premises," which states that "[n]o . . . gambling of any kind . . . [shall] be permitted or suffered upon any permit premises,"

and § 204-6 (now § 30-6-A9), entitled "Disciplinary proceedings," which provides that "[i]n disciplinary proceedings, it shall be no defense that an employee or agent of a permittee acted contrary to order, or that a permittee did not participate in the violating action or actions."

The facts disclosed by the transcript may be briefly summarized. About 11:45 a.m., on December 27, 1961, police officers entered the permit premises. The plaintiff permittee was not present, but Frank Cavanaugh, the bartender, was tending bar. There were no customers at the bar. Cavanaugh had before him on the bar three pieces of paper, which he placed in his pocket as the officers approached him. When the officers searched him, they discovered the papers were policy slips. Although the officers searched the premises and remained there for about three-quarters of an hour, they did not see any other evidence of any gaming, gambling, policy playing or horse-race betting on the premises except an expired sweepstake ticket in the wallet of a cook. The officers then took Cavanaugh to his room off the premises where they found some "evidence," the nature of which is not disclosed in the transcript. It appears that Cavanaugh was subsequently presented in the Circuit Court on a charge of policy playing, a question of illegal search and seizure was raised, and, thereafter, Cavanaugh pleaded guilty to a charge of horse-race betting and was fined $50. What prompted the change in the charge or where or under what circumstances the offense of horse-race betting took place is nowhere disclosed. Certainly there is nothing in the record to indicate or suggest that it was on the permit premises.

There was nothing in the evidence presented to

the commission which in any way connected Cavanaugh with any horse-race betting on the premises. The only evidence on the premises which might associate Cavanaugh with gaming was the three slips of paper taken from his pocket which were identified as the type used in policy playing. It is not necessary to consider whether Cavanaugh's personal possession of policy slips on the premises, without more, would justify the commission in finding that the plaintiff permitted gambling by policy playing on the premises. There were no allegations concerning policy playing in the complaint which the commission brought against the plaintiff. He was specifically charged with permitting betting on a horse race on the permit premises, and his license was suspended on an express finding by the commission that he did permit betting on a horse race on the permit premises. There is nothing in the evidence from which the commission could reasonably and logically reach the conclusion which it did.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other judges concurred.